UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHRYN PADULA, | ) | CIVIL ACTION NO. 3:19-CV-2184 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| CLARKS SUMMIT STATE | ) | |
| HOSPITAL, ET AL., | ) | |
| Defendants | ) | |

<u>MEMORANDUM OPINION</u>
*Defendants' Motion for Summary Judgment, Doc. 24*

I.    INTRODUCTION

Kathryn Padula ("Plaintiff") seeks money damages and other various forms of relief stemming from her employment as Chief Nurse at Clarks Summit State Hospital. She alleges that her employers discriminated against her because they failed to reasonably accommodate her disability, created a hostile work environment because of her disability, and interfered with her rights to take leave under the Family and Medical Leave Act ("FMLA"). Her employers now seek summary judgment on all of these claims. For the reasons explained below, Defendants' Motion for Summary Judgment will be granted in part and denied in part as follows:

(1)    Summary Judgment is GRANTED as to Plaintiff's Pennsylvania Human Relations Act ("PHRA") claims, and to Plaintiff's Americans with Disabilities Act ("ADA") claim of Hostile Work Environment; and

(2)    Summary Judgment is DENIED as to Plaintiff's ADA claim of Discrimination for Failure to Provide Reasonable Accommodation, and Plaintiff's FMLA Interference claim.

II.     BACKGROUND AND PROCEDURAL HISTORY

In November 2015, Plaintiff was hired as the Chief Nurse at Defendant Clarks Summit State Hospital ("Defendant Hospital"), an acute care psychiatric hospital operated by the Pennsylvania Department of Human Services ("Defendant PA DHS"). (Doc. 26, ¶¶ 4-5); Doc. 27, ¶¶ 4-5). Plaintiff worked at Defendant Hospital until October 2020, when her request for disability retirement was approved. (Doc. 26, ¶ 17); (Doc. 27, ¶ 17).

In 2017, Plaintiff was diagnosed with a brain aneurysm, a condition that requires her to keep her blood pressure low. (Doc. 26, ¶ 8); (Doc. 27, ¶ 8). Around the time of her diagnosis, she informed her supervisor, Monica Bradbury, of her condition. (Doc. 26, ¶ 9); (Doc. 27, ¶ 9). In August 2018, Plaintiff applied for and was granted intermittent leave pursuant to the Family Medical Leave Act ("FMLA"). (Doc. 26, ¶ 9); (Doc. 27, ¶ 9). Going forward, Plaintiff could ask Ms. Bradbury to take the rest of the day off, without submitting a formal written request. (Doc. 26, ¶ 10); (Doc. 27, ¶ 10). However, Plaintiff alleges that Ms. Bradbury discriminated against her when Ms. Bradbury denied her requests for accommodations/leave, on December 13, 2018, and on two requests made on May 15-16, 2019. (Doc. 28, pp. 2-3).

On December 13, 2018, there was a department heads meeting at Defendant Hospital. The subject matter of the meeting caused Plaintiff stress. (Doc. 29, p. 24)

(Padula Dep. 76:13-20). At some point during the meeting, Ms. Bradbury asked Plaintiff to meet her outside for a one-on-one meeting. (Doc. 26, ¶ 25); (Doc. 27, ¶ 25). During the one-on-one meeting, Plaintiff verbally requested to take leave. (Doc. 26, ¶¶ 26-27); (Doc. 27, ¶¶ 26-27). Ms. Bradbury denied Plaintiff's verbal request, but approved Plaintiff's request to take leave the day after, December 14, 2018. (Doc. 26, ¶¶ 26-27); (Doc. 27, ¶¶ 26-27).  During this entire episode, Plaintiff claims Ms. Bradbury was hostile towards her and berated Plaintiff. (Doc. 26, ¶ 23); (Doc. 27, ¶ 23).

In May 2019, Ms. Bradbury asked Plaintiff to generate a report that compiled requests for double overtime. (Doc. 1, ¶19). Plaintiff claims that generating these reports with a tight turnaround time and without direction exacerbated her fear and stress. (Doc. 1, ¶ 20). For a reason Plaintiff cannot remember, Plaintiff requested an accommodation to skip a meeting. (Doc. 29, p. 31). Ms. Bradbury denied that request. (Doc. 26, ¶ 33); (Doc 27, ¶ 33). During the meeting, Plaintiff again requested leave, but was again, denied. (Doc. 1, ¶¶ 23-26). During this episode, Plaintiff claims that Ms. Bradbury yelled at Plaintiff in front of other employees and became hostile. *Id*.

While Plaintiff can only identify incidents on these two days with detail, she claims that these are not the only incidents of discrimination. (Doc. 27, ¶¶ 19, 23). Plaintiff alleges that Defendants unnecessarily increased her workload, knowing that

the increased work would exacerbate her disability, that a culture of fear and retaliation prevented her from reporting her grievances to Human Resources, and that she would have received more favorable performance reviews but for her disability. (Doc. 27, ¶¶ 14-16). However, Plaintiff never received a performance review that was less than satisfactory. (Doc. 29, p. 37).

Based on these events, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 5, 2019. (Doc. 1-2). Plaintiff dually filed the same document with the Pennsylvania Human Relations Commission ("PHRC"). *Id*.

On or around September 18, 2019, Plaintiff received a Notice of Right to Sue from the EEOC and filed a Complaint in this Court on December 20, 2019 based on the same events and allegations in the charge of discrimination document. (Doc. 1, ¶ 11). Plaintiff alleges that Defendant Hospital and Defendant PA DHS (collectively "Defendants") failed to accommodate her disability and created a hostile work environment on the basis of her disability, violating both the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). (Doc. 1, ¶¶ 30-39). Plaintiff also alleges that Defendants interfered with her rights under FMLA. (*Id.* at ¶¶ 40-44).

Plaintiff seeks a variety of remedies for her alleged harms. For her ADA claims, Plaintiff seeks (1) economic, compensatory, and punitive damages, (2)

attorneys' fees, (3) affirmative relief "necessary to eradicate the effect of Defendant's unlawful employment practices," and (4) other relief as necessary. (Doc. 1, pp. 8-9).

For her PHRA claims, Plaintiff seeks (1) a judicial declaration that Defendants' acts are discriminatory and violates PHRA, (2) a permanent injunction forbidding Defendants from denying Plaintiff's requests for reasonable accommodation, (3) compensatory damages, (4) attorneys' fees, (5) court directed reports to evaluate compliance with orders issued by the Court, and (6) other relief as necessary. (Doc. 1, pp. 9-10).

For her FMLA claims, Plaintiff seeks (1) a permanent injunction forbidding Defendants from discriminating and interfering against Plaintiff's FMLA rights, (2) a permanent injunction forbidding Defendants from discriminating against Plaintiff for instituting this action, (3) liquidated damages, (4) attorneys' fees, and (5) other relief as necessary. (Doc. 1, p. 11).

After the end of discovery, Defendants filed a Motion for Summary Judgment. (Doc. 24). Along with their Motion, Defendants filed a Brief in Support (Doc. 25), a Statement of Facts (Doc. 26), and three exhibits. (Docs. 25-1, *et seq.*). Plaintiff filed an Answer to the Statement of Facts (Doc. 27), a Brief in Opposition (Doc. 28) with a table of contents (Doc. 28-1), and Exhibits (Doc. 29). On February 12, 2021, Defendants filed a Reply Brief. (Doc. 30). This matter is now ripe for resolution.

III.     SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides as follows:

A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). For purposes of Rule 56, a fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Haybarger v. Laurence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 412 (3d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (quoting *Anderson,* 477 U.S. at 248-49).

In adjudicating a summary judgment motion, the court must view the evidence presented in the light most favorable to the opposing party, *Anderson*, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). When the non-moving party's evidence contradicts that

advanced by the movant, then the non-movant's must be taken as true. *Big Apple BMW*, 974 F.2d at 1363.

Provided the moving party has satisfied its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts, supported by evidence, that show a genuine issue for trial, and it may not rely upon the allegations or denials of its pleadings. *See Martin v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007); *see also* Fed. R. Civ. P. 56(c). A non-moving party's failure to show a genuine issue of material fact for even one essential element of a claim after the moving party has met its burden renders all other facts immaterial, and it is enough to permit summary judgment for the moving party. *See Celotex*, 477 U.S. at 323. Further, once a moving party's burden has been met, a non-moving party's attack on settled legal precedent is also insufficient unless there is a significant justification for the opposition to precedent. *See Bucklew v. Precythe*, 139 S. Ct. 1112, 1126, 1134 (2019).

IV.    ANALYSIS

Plaintiff has alleged the following claims:

(1) PHRA claims alleging discrimination due to a failure to accommodate and hostile work environment, (Count II);

(2)     ADA claims alleging discrimination due to a failure to accommodate and hostile work environment, (Count I); and

(3)     An FMLA interference claim (Count III).

A.     PLAINTIFF'S PHRA CLAIMS

In her Brief, Plaintiff writes that "Count II is a PHRA hostile work environment and discrimination claim." (Doc. 28, p. 2). In a footnote, in the same Brief, Plaintiff writes:

> As this Court is aware, the Plaintiff's PHRA claims are analyzed under the same standard as ADA claim. *See Rubano v. Farrell Area School Dist.*, 991 F.Supp.2d 678 (W.D. Pa. 2014) (holding District court would apply the same federal standard to retaliation claims under the ADA and Pennsylvania Human Relations Act (PHRA), as there was nothing in language of PHRA retaliation provision to warrant different treatment).

(Doc. 28, p. 6 n.1).

Although Defendants have raised specific arguments as to Plaintiff's PHRA claims alleging failure to exhaust and that Plaintiff's claims are barred by the Eleventh Amendment, Plaintiff has not responded to them.

1.     Whether Plaintiff Exhausted Her PHRA Claims

Pursuant to the PHRA, the PHRC has exclusive jurisdiction over all cases involving a claim of discrimination for one year so that it may investigate and potentially resolve the claim. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001); *see also* 43 P.S. § 962(c). A complaint need not be filed directly with the PHRC, and the transmittal of the EEOC complaint to the

PHRC constitutes a filing of a verified complaint with the PHRC. *Tlush v. Mfr. Resource Ctr.,* 315 F.Supp.2d 650, 656 (E.D. Pa. 2002). No right-to-sue letter is required in connection with PHRA claims and, after the expiration of one year, a complainant may bring suit regardless of whether or not he or she has received a letter from the PHRC. *Burgh*, 251 F.3d at 471.

Before seeking judicial remedies, a plaintiff must exhaust all administrative remedies and comply with all procedural requirements under the PHRA. *Eldridge v. Municipality of Norristown,* 828 F.Supp.2d 746, 758 (E.D. Pa. 2011) (citing *Clay v. Advanced Comput. Applications*, 559 A.2d 917, 919-20 (Pa. 1989)).

There is no dispute that on June 5, 2019, Plaintiff requested that the EEOC dual file her complaint with the PHRC. (Doc. 1-2); (Doc. 26, ¶ 18); (Doc. 27, ¶ 18). Six months later, on December 20, 2019, Plaintiff initiated this action. Therefore, Defendants are correct that Plaintiff initiated this action before the required one-year period.

As explained in *Eldridge*:

> courts in the Third Circuit have adopted a more flexible approach to PHRA exhaustion by permitting plaintiffs to maintain PHRA claims if the period of exhaustion expires during the pendency of litigation or if plaintiff files an amended complaint after the period of exhaustion. *See Rosetsky v. Nat'l Bd. of Med. Examiners of U.S., Inc.,* 350 Fed.Appx. 698, 703 & n. 3 (3d Cir. 2009) (noting that a district court may exercise jurisdiction over a prematurely filed PHRA claim by allowing plaintiff to amend her complaint, when the mandatory one-year period had expired during litigation); *Schaefer v. Independence Blue Cross, Inc.,* No. 03–cv–5897, 2005 WL 181896, at **5–6 (E.D. Pa. Jan. 26, 2005)

(denying summary judgment on prematurely filed PHRA claim because one-year deadline expired during court proceedings and plaintiff filed an amended complaint after the expiration of the deadline); *Violanti v. Emery Worldwide A–CF Co.,* 847 F.Supp. 1251, 1258 (M.D. Pa. 1994) (holding that premature filing of PHRA claim was curable by the passage of time); *see also Wardlaw v. City of Phila.,* No. 09–cv–3981, 2011 WL 1044936, at **3 & n. 45 (E.D.Pa. Mar. 21, 2011) (noting the flexible approach of the Third Circuit to PHRA exhaustion and listing supporting case law).

828 F.Supp.2d at 758. I decline to dismiss Plaintiff's PHRC claims because Plaintiff's failure to exhaust has already been cured by the passage of time. More than one year has passed since Plaintiff's PHRC filing, entitling her to maintain an action. *Violanti v. Emery Worldwide A-CF Co.*, 847 F.Supp. 1251 (M.D. Pa. 1994); *Bines v. Williams*, No. 17-4527, 2018 WL 4094957, at *5 (E.D. Pa. Aug. 27, 2018).

> 2.    Whether Plaintiff's PHRA Claims Are Barred by Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides that:

> The Judicial power the of United States shall not be construed to extend to any suit in law or equity, commence or prosecuted against of the United States by Citizen of another State, or by Citizen or Subjects of any Foreign State.

U.S. Const. Amend. XI.

Plaintiff does not dispute that Clarks Summit State Hospital and the Pennsylvania Department of Human Services are agencies of the Commonwealth of Pennsylvania that fall under the scope of the immunity conferred under the Eleventh Amendment. *See e.g. Evans-Sampson v. Pa. Dept. of Human Servs.*, No. 20-CV-

653, 2020 WL 1166493 at *3 (E.D. Pa. Mar. 10, 2020) (finding that the Pennsylvania Department of Human Services is entitled to immunity under the Eleventh Amendment); Order, *McCollough v. Swithers*, No. 3:CV-03-686 (M.D. Pa. June 6, 2003), ECF No. 7 (dismissing claims against Clarks Summit State Hospital based on Eleventh Amendment Immunity).

Eleventh Amendment protection, however, is not absolute. A state or state agency's sovereign immunity under the Eleventh Amendment may be relinquished through (1) waiver by a state's consent to suit against it in federal court and (2) the abrogation of such immunity by an act of Congress. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99-100 (1984).

The PHRA's definition of "employer" expressly includes "the Commonwealth or any political subdivision or board . . . ." 43 P.S. § 954(b). This language has been interpreted as a waiver of statutory sovereign immunity in state court. *See Woodring v. Republican Caucus of Pa. House of Representatives*, 2019 WL 1383633 at *8 (M.D. Pa. Mar. 27, 2019) (citing *Mansfield State Coll. v. Kovich*, 407 A.2d 1387, 1388 (Pa. Commw. Ct. 1979). "That a state consents to suit in its own courts, however, 'is not a waiver of its immunity from suit in federal court.'" *Woodring*, 2019 WL 1383633 at *8 (quoting *Sossamon v. Texas*, 563 U.S. 277, 285 (2011)). Thus, the Commonwealth has not consented to waive its immunity from PHRA lawsuits in federal court.

There has been no abrogation of immunity by an act of Congress. *Woodring*, 2019 WL 1383633 at *8 ("The General Assembly did not express and intent to waive Eleventh Amendment protections under the PHRA."). Further, there has been no waiver of immunity in this case, and no exception to Eleventh Amendment immunity applies. *See e.g. Newton v. Pa. State Police*, 2020 WL 2572148 at *7-8 (W.D. Pa. May 21, 2020) (discussing waiver by removal).

Accordingly, Defendants are entitled to summary judgment as to Plaintiff's PHRA claims.

### B. PLAINTIFF'S ADA DISCRIMINATION CLAIM: FAILURE TO ACCOMMODATE

Title I of the ADA provides, as a general rule, that:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The statute also enumerates specific examples of conduct that could constitute discrimination prohibited under the statute, including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

In order to establish a *prima facie* case of discrimination for the failure to accommodate under the ADA, a plaintiff must prove: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the

essential functions of her job, with or without reasonable accommodation; and (3) she has suffered an adverse employment action because of her disability. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (quoting *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). An adverse employment decision may include refusing to make reasonable accommodations for a plaintiff's disabilities. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).

> Although the ADA statute does not mention an interactive process:
>
> [t]he ADA's regulations state that: "To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of accommodation. This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(*o*)(3). Similarly, the EEOC's interpretive guidelines provide that: "Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability." 29 C.F.R. Pt. 1630, App. § 1630.9 at 359.

*Taylor*, 184 F.3d at 311. The Third Circuit has explained:

> In handling a disabled employee's request for a reasonable accommodation, "both parties [employers and employees] have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." *Taylor,* 184 F.3d at 312 (quoting *Mengine v. Runyon,* 114 F.3d 415, 420 (3d Cir. 1997)). "The interactive process does not dictate that any particular concession must be made by the employer; nor does the process remove the employee's burden of showing that a particular accommodation rejected by the employer would have made the employee qualified to perform the job's essential functions. All the

> interactive process requires is that employers make a good-faith effort
> to seek accommodations." *Id.* at 317 (citation omitted).

*Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 187 (3d Cir. 2009). A plaintiff can establish the final element of an ADA discrimination claim (adverse employment action) arising out of a failure to accommodate by showing that Defendants failed to engage in the interactive process. *Phillips v. Ctr. for Vision Loss*, 3:15-CV-563, 2017 WL 839465 at *12 (M.D. Pa. Mar. 3, 2017).

The critical issues in this case are whether Plaintiff could, with reasonable accommodations perform the essential functions of her job, and whether the denial of certain requests for accommodation constitute adverse employment action.

1.   Whether Plaintiff Could Perform the Essential Functions of Her Position With Reasonable Accommodations

To determine if someone is a qualified individual, the Court follows a two-step inquiry: (1) does the person satisfy the prerequisites for the position; and (2) can the person perform the essential function of the position, with or without reasonable accommodation. 29 C.F.R. § 1630.2(m). The parties do not dispute that Plaintiff satisfies all the prerequisites for the position; therefore, whether Plaintiff is a qualified individual will depend on whether she can perform the "essential functions" of the position with or without reasonable accommodation.

Essential functions are the fundamental duties of the position and do not include marginal tasks. 29 C.F.R. § 1630.2(n)(1). A job function may be considered essential for any of several reasons, including, but not limited to, the following:

> (i) The function may be essential because the reason the position exists is to perform that function;
>
> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
>
> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

29 C.F.R. § 1630.2(n)(2).

Courts look at a variety of evidence to decide whether a particular function is "essential," including but not limited to:

> (i)     The employer's judgment as to which functions are essential;
>
> (ii)    Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii)   The amount of time spent on the job performing the function;
>
> (iv)    The consequences of not requiring the incumbent to perform the function;
>
> (v)     The terms of a collective bargaining agreement;
>
> (vi)    The work experience of past incumbents in the job; and/or
>
> (vii)   The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3). Determining what is an essential function "is a factual determination that must be made on a case by case basis based upon all relevant evidence." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 612 (3d Cir. 2006).

For the purposes of this motion, Defendants do not contest that Plaintiff satisfies the prerequisites of the position. (Doc. 25, p. 14). Instead, they argue that Plaintiff has not presented enough facts to support that she could perform the following essential employment functions: (1) working under pressure; and (2) working with approximately 175 subordinates.

In response, Plaintiff argues that she has met her burden of showing that she is able to perform the essential functions of her position because she continued to work for two years without accommodation. (Doc. 28, p. 7).

There is no dispute that Plaintiff was diagnosed with an aneurysm in September 2017. (Doc. 26, ¶ 8); (Doc. 27, ¶ 8). Plaintiff continued to work, and did not seek any accommodation until she requested, and was granted, FMLA leave in August 2018. (Doc. 26, ¶ 10); (Doc. 27, ¶ 10). Plaintiff continued to work until October 2020. (Doc. 26, ¶ 17); (Doc. 27, ¶ 17). Although Plaintiff disputes that her performance reviews were as favorable as was deserved, no evaluation suggested Plaintiff's job performance was unsatisfactory or that Plaintiff was unable to perform her duties. (Doc. 26, ¶ 16); (Doc. 27, ¶ 17).

Thus, even assuming *arguendo* that "dealing with stress" and working with 175 subordinates are essential functions of Plaintiff's position, there is a material dispute of fact as to whether Plaintiff was otherwise qualified to perform the essential functions of the position.

> 2.      Whether Plaintiff Suffered Adverse Employment Action

As discussed above, Plaintiff can satisfy the third and final element of a *prima facie* case of discrimination under the ADA by showing that Defendants failed to reasonably accommodate Plaintiff. Plaintiff can show that that Defendants did not reasonably accommodate her by showing that they failed to engage in the interactive process with her. In order to do so, Plaintiff must prove:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Taylor*, 184 F.3d at 319-20.

With respect to the first element of Plaintiff's *prima facie* case (knowledge), Defendants do not appear to dispute that Plaintiff is "disabled," as it is defined by the ADA. Furthermore, there is no dispute that Plaintiff's employer was made aware of Plaintiff's medical condition around the time of diagnosis. (Doc. 26, ¶ 9); (Doc. 27, ¶ 9).

With respect to the second element of Plaintiff's *prima facie* case (requesting accommodation), there is no dispute that Plaintiff sought, and was approved for, intermittent FMLA leave. (Doc. 26, ¶ 10); (Doc. 27, ¶ 10). Courts have held that requests for intermittent FMLA leave, like the one at issue in this case, have been found to satisfy the second element of a *prima facie* ADA claim of failure to provide reasonable accommodation. *Beishl v. Cty. Of Bucks*, No. 18-2835, 2018 U.S. Dist. LEXIS 216551, at * 9 (E.D. Pa. Dec. 27, 2018) (quoting *Isley*, 275 F.Supp.3d at 631). *See also Isley v. Aker Phil. Shipyard, Inc.*, 275 F.Supp.3d 620, 631 (E.D. Pa. 2017); *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 155-56 (3d Cir. 2017); *Watson v. Drexel Univ.*, No. 19-1027, 2020 U.S. Dist. LEXIS 177329, at * 5 (E.D. Pa. Sept. 28, 2020); *Harper v. Odle Mgmt. Co., LLC*, No. 2:19-cv-00597, 2021 U.S. Dist. LEXIS 34948, at *27 (W.D. Pa. Feb. 25, 2021). Plaintiff then sought, and was denied requests to utilize that FMLA leave on December 13, 2018, and May 16, 2019. Plaintiff also contends that she sought, and was denied, accommodation to miss a meeting on May 16, 2019.

However, on the third element of her failure to engage in the interactive process claim, Plaintiff argues that there is a material dispute as to whether Defendants made a good faith effort to assist her on December 13, 2018 and May 16, 2019. She argues that "Defendants never engaged in the interactive process to

determine an appropriate accommodation for Plaintiff." (Doc. 28, p. 7). Plaintiff

does not cite to any legal authority or any evidence to support this argument.

In their reply brief, Defendants argue:

> During the first alleged discriminatory instance, described as the
> December 2018 meeting, after Plaintiff had raised her voice to a co-
> worker in disagreement, Ms. Bradbury asked Plaintiff to step outside of
> the meeting room. (*See* Doc. 29, Bradbury Dep. 53:7-16.) Outside of
> the room, Plaintiff requested to go home. (*Id.* 53:17-21.) Ms. Bradbury
> said, "Okay. But talk to me." (*Id.* 54:1-5.)
>
> . . . .
>
> As to the second alleged incident of discrimination, there appears to be
> a misunderstanding as to the facts. Plaintiff identified in her Complaint
> that on May 13, 2019 she was asked to complete an assignment by May
> 15th, but was given no direction and the stress exacerbated her
> condition. (Doc. 1 ¶¶ 19-20.) Plaintiff identified that she "requested an
> accommodation in order to complete the [assignment]" and the
> accommodation was to be permitted to forgo attending a Root Cause
> Analysis Meeting. (*Id.* ¶ 22.) The actual e-mails between Plaintiff and
> Ms. Bradbury paint a different picture as outlined by Defendants in
> their Statement of Material Facts. (*See* Doc. 26 ¶¶ 29-33).

(Doc. 30, pp. 5-7).

I find that there is a material dispute as to whether Plaintiff has satisfied this

aspect of her *prima facie* failure to accommodate case.

It is undisputed that on December 13, 2018, a meeting got heated, and Plaintiff

was asked to step out and meet in Ms. Bradbury's office. It is also undisputed that,

Plaintiff asked Ms. Bradbury (her immediate supervisor) for permission to utilize

her approved "intermittent FMLA leave," because Plaintiff could feel her blood

pressure changing. There is, however, a material dispute about what happened at the meeting with the supervisor. At deposition, Plaintiff's supervisor testified that, when Plaintiff asked to leave that day, Ms. Bradbury said "okay" but asked Plaintiff to come speak with her first. (Doc. 29, p. 66). At her deposition, Plaintiff testified that when she asked to leave, Ms. Bradbury said "no, you're coming to my office." (Doc. 25-1, p. 82). Ms. Bradbury testified that, during the meeting Plaintiff calmed down and returned to work. (Doc. 29, p. 66). Plaintiff testified that she could not remember if she calmed down, or if she left for the day or stayed. (Doc. 25-1, p. 82). Ms. Bradbury testified that she asked Plaintiff to meet so that Ms. Bradbury could try to understand why Plaintiff became upset during the meeting. (Doc. 29, p. 66). Plaintiff testified that the meeting involved a discussion of how a new policy would impact Plaintiff's performance reviews. (Doc. 25-1, p. 82).

Considering the deposition testimony of both Plaintiff and her supervisor, material disputes exist over whether Plaintiff was authorized to leave after she spoke with the supervisor, or whether the discussion between Plaintiff and the supervisor was about Plaintiff's request to utilize her intermittent leave. Similar disputes exist as to the requests made on May 16, 2019. These disputes, as to whether Defendants engaged in the interactive process create a dispute as to whether Plaintiff has satisfied the third element (adverse employment action) of her *prima facie* case of discrimination.

Accordingly, Defendants' motion for summary judgment as to Plaintiff's failure to accommodate claim will be denied, because there are material disputes as to whether Plaintiff has made out a *prima facie* case of discrimination for failure to accommodate under the ADA.

C.   PLAINTIFF'S ADA HOSTILE WORK ENVIRONMENT CLAIM

To prevail on a ADA hostile work environment claim, Plaintiff must show the following five factors:

> (1) [she] is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) [the employer] knew or should have known of the harassment and failed to take prompt effective remedial action.

*Watson v. Mental Health Ass'n*, 168 F.3d 661, 667 (3d Cir. 1999).

Defendants argue that they are entitled to summary judgment because Plaintiff has not provided evidence to support the first and fourth elements of her claim.

With respect to Defendants' argument that Plaintiff is not a qualified individual (the first element of this claim), I find there is a material dispute of fact as to whether Plaintiff has satisfied this element of her claim for the same reasons explained in IV(B)(1) of this Memorandum.

With respect to Defendants' argument that they are entitled to summary judgment because Plaintiff has not shown that the conduct at issue is severe or pervasive (the fourth element of this claim), I agree.

The Third Circuit has explained that:

> The ADA anti-discrimination mandate does not require a happy or even a civil workplace. Instead, it only prohibits harassment so severe or pervasive as "to alter the conditions of the victim's employment and create an abusive working environment." "[O]rdinary tribulations of the workplace, such as the sporadic use of abusive language, [ ] jokes, and occasional teasing" are not enough to sustain a hostile work environment claim. To determine if the harassment meets the "severe or pervasive" standard, we consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance."

*Ballard-Carter v. Vanguard*, 703 F. App'x 149, 152 (3d Cir. 2017) (internal footnotes omitted).

In their brief in support, Defendants argue that isolated incidents of denial of leave requests cannot be severe or pervasive harassment, as required for this claim. (Doc. 25 at 12-13).[1]

In response, Plaintiff argues:

---

[1] In their reply brief, Defendants argue that the evidence cited by Plaintiff of "other instances" of hostility, including Plaintiff's testimony and the affidavit Ms. Quinn should not be considered for the purposes of this motion. I have not addressed these arguments because, even considering this evidence, Plaintiff has not provided enough evidence to show severe or pervasive harassment.

> Here, Plaintiff's supervisor has repeatedly become extremely hostile toward her and yelled at her in front of other employees in the department. *See* Exhibit C. Plaintiff identified instances of "idle threats" that occurred during Monday meetings and unnecessarily increased workload, which she believed were made with the knowledge that they would exacerbate her disability by unnecessarily raising her blood pressure. *See* Exhibit A at pp. 35-44; 70-74; 78-80.

(Doc. 28, p. 8). In support of her position, Plaintiff cites to her deposition testimony. In that testimony, Plaintiff states that, although an employee is permitted to add comments to an employee performance review, Plaintiff did not add comments to hers out of fear of retaliation. (Doc. 29, p. 14). Plaintiff reported that the anticipated "retaliation" would be in the form of "idle threats." *Id.* When asked to describe these threats Plaintiff said "a writeup," and "pushback," and by increasing Plaintiff's workload. (Doc. 29, p. 15). Plaintiff testified that to speak up for yourself was to risk Ms. Bradbury's wrath. (Doc. 29, p. 25). Plaintiff described the workplace hierarchy as a "dictatorship." *Id.* These "idle threats" as Plaintiff describes them, do not appear to relate to her disability or attempts to seek accommodation.

Plaintiff also submitted an affidavit by nonparty Dawn Quinn, who reported that Plaintiff was "berated" for attempting to utilize leave. (Doc. 29, p. 82). This affidavit appears to relate to the incidents on December 13, 2018 and May 16, 2019.

Upon review of the record, there is no evidence that comes close to the kind of severe or pervasive discrimination necessary to support a hostile work environment claim. *See e.g. Mercer v. SEPTA*, 608 F. App'x 60, 64 n.3 (3d Cir.

2015) (granting summary judgment because there was no "severe or pervasive" harassment in a case where the plaintiff could not point to specific incidents that could have contributed to a hostile work environment claim); *Otero v. New Mexico Corrections Dept.*, 640 F. Supp. 2d 1346, 1358-59 (D.N.M. 2009) (finding that statements and actions by supervisors, including yelling at the employee in front of others, asking an employee with PTSD if he was in therapy, issuing a letter of reprimand, and harassing the employee about his dress and hair did not rise to the level of severity or pervasiveness required to support a hostile working environment claim).

Accordingly, I find that Defendants are entitled to summary judgment as to Plaintiff's ADA hostile work environment claim.

### D.   FMLA INTERFERENCE CLAIM

Under the FMLA, eligible employees are granted the right to take up to 12 work weeks of leave during a 12 month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). This leave "may be taken intermittently or on a reduced leave schedule when medically necessary." 29 U.S.C. § 2612(b)(1).

If both the employee and employer agree that it is medically necessary, leave under the FMLA can be taken intermittently. 29 U.S.C. § 2612(b)(1). In this context,

intermittent leave is defined as "leave taken in separate periods of time due to a single illness or injury, rather than for one continuous period of time, and may include leave periods from an hour or more to several weeks." 29 C.F.R. § 825.102.

All FMLA leave, whether intermittent or not, falls into two categories: foreseeable or unforeseeable. If, as in this case, the need to take intermittent leave is unforeseeable, an employee must give notice to the employer within one or two days of learning of the need for leave, except where extraordinary cases prevent such notice. 29 C.F.R. § 825.303. The relevant regulation explains:

> [i]n the case of a medical emergency requiring leave because of an employees own serious health condition or to care for a family member with a serious health condition, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.

*Id.*

To protect these rights, the FMLA also makes it "unlawful for any employer to interfere with, restrain, or deny the exercise or attempt to exercise, any right provided" in the FMLA. 29 U.S.C. § 2615(a)(1). This type of claim is typically referred to as an "interference" claim. Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). To prevail on a FMLA interference claim, Plaintiff must show that "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to

FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Id.* Simplified, the plaintiff must show that he or she was "entitled to benefits under the FMLA and that [plaintiff] was denied them." *Hofferica v. St. Mary Med. Ctr.*, 817 F. Supp. 2d 569, 576 (E.D. Pa. 2011) (quoting *Thurston v. Cherry Hill Triplex*, 941 F. Supp. 2d 520, 526 (D.N.J. 2008)).

In their Brief in Support of Summary Judgment, Defendants argue that Plaintiff has not shown she was denied benefits under the FMLA—element five. (Doc. 25, p. 21). Because this is the only argument raised in their brief, I find that for the purposes of this motion only, Defendants do not dispute that Plaintiff has met her obligations under elements one through four.

In response, Plaintiff argues that she requested FMLA leave on December 13, 2018 and May 16, 2019, and was denied the ability to do so.

As noted in Section IV(B)(2) of this opinion, there is a material dispute as to whether Plaintiff's FMLA leave requests on December 13, 2018 and May 16, 2019 were denied. In their reply, Defendants argue that Plaintiff's FMLA leave requests are approved by Billie Joe Arnold—not Ms. Bradbury. (Doc. 30, pp. 13-15). This issue is also in dispute. There is evidence in the record suggesting that Plaintiff was required to notify Ms. Bradbury when she took FMLA leave, and that Ms. Bradbury

denied leave on the two days at issue. This dispute also precludes the entry of summary judgment as to this claim.

V.     CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 24) is GRANTED in part and DENIED in part as follows:

(1)     Summary Judgment is GRANTED as to Plaintiff's PHRA claims, and to Plaintiff's ADA claim of Hostile Work Environment; and

(2)     Summary Judgment is DENIED as to Plaintiff's ADA claim of Discrimination for Failure to Provide Reasonable Accommodation, and Plaintiff's FMLA Interference claim.

An appropriate order will follow.


Date: September 27, 2021                    BY THE COURT

                                                      *s/William I. Arbuckle*
                                                      William I. Arbuckle
                                                      U.S. Magistrate Judge